UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**ANTHONY BROWN**,                                            :
                                                              :
                    Petitioner,    :   **MEMORANDUM DECISION AND**
                                                              :   **ORDER**
       – against –                           :
                                                              :   16-CR-297 (AMD)
**UNITED STATES OF AMERICA**,                                 :
                                                              :
                    Respondent.    :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

Before the Court are the petitioner's motions to vacate his sentence pursuant to 28 U.S.C. § 2255 and for compassionate release, pursuant to 18 U.S.C. § 3582(c). For the following reasons, the motions are denied.

## BACKGROUND

The Court assumes familiarity with the facts and procedural history of the petitioner's case, which are set out more fully in the Court's July 14, 2023, Memorandum Decision and Order denying the petitioner's habeas petition. (ECF No. 448.)

### I. Relevant Factual Background

On April 18, 2017, the petitioner pled guilty to conspiring to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(ii)(II), aggravated identity theft, in violation of 18 U.S.C. § 1028(A), and conspiring to distribute and possess with intent to distribute substances containing cocaine and heroin, in violation of 21 U.S.C. § 846. (ECF No. 221 at 2–3; ECF No. 367-1, A-22.) As part of the agreement, the petitioner stipulated to additional conduct in connection with the 2016 seizure of contraband from his Williamsburg apartment, which he agreed would be treated as additional

crimes of conviction under the sentencing guidelines. (ECF No. 367 at 3–4.) The plea agreement estimated an adjusted offense level of 26 and a criminal history category of III, with an estimated sentence range of 102 to 121 months' imprisonment. (*Id.* at 4.)[1]

In the Presentence Investigation Report ("PSR"), filed on July 31, 2017, the Probation Department determined that the petitioner's offense level was 31, and his criminal history category was VI. (ECF No. 153 ¶ 140.) The Probation Department included the petitioner's 2002 conviction for criminal sale of a controlled substance in the third degree (New York Penal Law § 220.39(1)) — then a predicate offense for career offender purposes[2] — and his 2002 conviction for assault in the second degree (New York Penal Law § 120.05(2)). (*Id.* ¶¶ 95–96.)[3] The Probation Department concluded that the petitioner was a career offender, and calculated his guideline range as 168 to 210 months, which included a one-point global plea reduction. (*Id.* ¶¶ 96, 102, 140, 158.)

On October 11, 2017, the Court sentenced the petitioner to a total of 192 months — two concurrent terms of 168 months on the narcotics cases and a mandatory consecutive two-year term for the aggravated identity theft — and four years of supervised release. (October 11, 2017 Sentencing Tr. at 28–32.) In imposing sentence, the Court considered the Guidelines range, the

---

[1] The calculation in the plea agreement included a mandatory two-year consecutive sentence for the identity theft charge. (ECF No. 367 at 4.)

[2] Section 4B1.1 of the Guidelines in effect when the defendant was sentenced provides in relevant part that if a defendant was at least 18 years old when he committed the current offense, and the current offense is a crime of violence or a narcotics offense, the defendant "is a career offender if ... [he] has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). A "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the . . . dispensing of a controlled substance." U.S.S.G. § 4B1.2(b).

[3] The PSR did not specify that the assault conviction was a predicate offense for career offender purposes.

2

factors in 28 U.S.C. § 3553, as well as the petitioner's criminal history and prior fugitive status. (*Id.*)

## II.     Relevant Procedural Background

On appeal to the Second Circuit, the petitioner claimed, among other things, that he was not a career offender because his assault conviction was not a "crime of violence" and was not properly verified, and that his criminal sale of a controlled substance conviction was not a "controlled-substance offense" within the meaning of the Guidelines. *United States v. Sadler*, 765 F. App'x 627, 629–31 (2d Cir. 2019). The Second Circuit affirmed the petitioner's conviction on May 16, 2019, concluding that the petitioner was properly designated a career offender. *Id.* at 630–31.

On March 19, 2020, the petitioner moved to vacate his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 366.) He claimed that his trial and appellate lawyers were ineffective, and that his sentence was unconstitutional, relying on the same arguments he raised on appeal. (*Id.*; ECF No. 448 at 12–17.) While his motion was pending, the petitioner asked the Court to appoint counsel, and filed two supplemental notices of authority, including the Second Circuit's decision in *United States v. Gibson*, 55 F.4th 153 (2d. Cir. 2022). (ECF Nos. 414, 433.)

On July 14, 2023, the Court denied the petitioner's habeas petition but granted him "leave to amend his petition to address whether *Gibson* requires the Court to consider whether it should have applied the career offender enhancement," and also granted his motion to appoint counsel. (ECF No. 448 at 17–21.)

On August 14, 2023, Cesar De Castro was appointed to represent the plaintiff. (ECF No. 450.)[4] Mr. De Castro filed an amended habeas petition on November 13, 2023. (ECF No. 457.)

---

[4] The Court thanks Mr. De Castro for his advocacy on the petitioner's behalf.

Subsequently, the petitioner filed a *pro se* motion for compassionate release, pursuant to 18 U.S.C. § 3582(c). (ECF No. 467.) The government opposes both motions (ECF Nos. 460, 474.)

## LEGAL STANDARD

I.  **Section 2255 Petition**

Under 28 U.S.C. § 2255, a "prisoner in custody under sentence of a [federal] court" may "move the court which imposed the sentence to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The Court must "vacate and set the judgment aside" if the Court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).

As a general matter, "Section 2255 relief is available only when the claimed error constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice' and presents 'exceptional circumstances when the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Nnebe v. United States*, 534 F.3d 87, 90 (2d Cir. 2008) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also United States v. Addonizio*, 442 U.S. 178, 185 (1979). In assessing challenges to the application of the Sentencing Guidelines, "the scope of review on a § 2255 motion should be 'narrowly limited' in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (citation omitted).

II.  **Motion for Compassionate Release**

Under 18 U.S.C. § 3582(c)(1)(A), a court may "reduce the term of imprisonment" on compassionate release grounds if it finds, after considering the factors set forth in 18 U.S.C. § 3553(a), that "extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission."

18 U.S.C. § 3582(c)(1)(A).  A defendant moving for compassionate release must exhaust all of his administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  The defendant must prove that "extraordinary and compelling reasons" justify a reduction of his sentence.  *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992); *see also United States v. Andrews*, 705 F. Supp. 3d 142, 147 (S.D.N.Y. 2023).  A motion for compassionate release is "not an opportunity to second guess or to reconsider the sentencing court's original decision."  *United States v. Roney*, 833 F. App'x 850, 854 (2d Cir. 2020) (citation and quotations omitted).

## DISCUSSION

### I.     Section 2255 Petition

The petitioner argues that under *Gibson*, he is entitled to resentencing because his prior conviction under New York Penal Law § 220.39(1) no longer qualifies as a predicate conviction for career offender status.  (ECF No. 457 at 2.)  The petitioner asserts that if he had been sentenced without the career offender designation, "the appropriate starting point" for the Guidelines range would have been "exponentially lower and would have resulted in a much lower sentence."  (*Id.* at 1.)

The government responds that the Court should deny the petition for "two related but independently sufficient reasons."  (ECF No. 460 at 6.)  First, even assuming *Gibson* applies to the petitioner's case, a "Guideline calculation error" does not "rise to the level of a 'complete miscarriage of justice'" justifying habeas relief.  (*Id.*)  Second, because the Court's sentencing decision "thoroughly weighed the Section 3553(a) factors" the petitioner cannot show "actual prejudice, much less a 'complete miscarriage of justice.'"  (*Id.* (citation omitted).)

In *Gibson v. United States*, Gibson's criminal record included a 2002 felony conviction for third-degree attempted criminal sale of a controlled substance, in violation of New York Penal Law § 220.39(1).  55 F.4th at 156.  At the time of the 2002 conviction, New York's drug

statute was consistent with federal law. *Id.* at 156–57. However, when Gibson was sentenced on a federal charge in 2020, naloxegol was no longer a federal controlled substance under the Controlled Substances Act. *Id.* at 165–66. The question before the Second Circuit was which version of the federal CSA schedules applied in determining whether Gibson was a career offender — the 2002 CSA schedules, when Gibson was convicted in state court, or the 2020 schedules in effect at the time of his federal sentencing. *Id.* at 159. The Second Circuit concluded that since naloxegol was removed as a federally controlled substance in 2015, the federal law was categorically narrower than the state-law counterpart when the defendant was convicted and sentenced, so the career offender enhancement was inapplicable. *Id.* at 166–67.

The petitioner's case is almost identical to *Gibson*. When the petitioner was convicted of violating New York Penal Law § 220.39(1) in 2002, naloxegol was a controlled substance in New York and on the CSA. (ECF No. 457 at 6.) By the time the petitioner was sentenced in this case, in 2017, naloxegol had been removed from the CSA. *Gibson*, 55 F.4th at 167. Thus, had *Gibson* been decided when the petitioner was sentenced, the petitioner's "career-offender enhancement . . . premised in part on [his] 2002 conviction under New York State Penal Law §§ 220.39(1) . . . [would have been] inapplicable . . . for lack of a necessary predicate." *Id.*

The government does not deny that *Gibson* would have applied if the petitioner were sentenced today. (ECF No. 460 at 6 n.4.) The question is whether the career offender designation is a "complete miscarriage of justice" that requires resentencing. *Nnebe*, 534 F.3d at 90. The weight of authority from this circuit shows that it is not.

In *United States v. Hoskins*, the government appealed the district court's grant of a Section 2255 petition in which Hoskins sought resentencing based on changed circumstances affecting the applicability of the career offender enhancement. 905 F.3d 97, 99 (2d Cir. 2018).

Although Hoskins' record, which included a 2002 Vermont drug conviction and 2003 federal drug conviction, made him a career offender, he entered into a plea agreement in which he and the government agreed to a below-Guidelines prison term of 112 months, which the district court imposed. *Id.* at 100. Subsequently, the Vermont Superior Court vacated the state drug conviction, one of the offenses that made him a career offender. *Id.* Hoskins moved to vacate his federal sentence, arguing that "continued imposition of the formerly agreed-upon 112-month sentence was a miscarriage of justice" because his career offender status was based on a conviction that was no longer valid. *Id.* at 101. The district court granted the motion and resentenced the defendant to a prison term of 86 months. *Id.* at 101–02.

The Second Circuit reversed. The court observed that "the determinative question on a § 2255 sentence challenge is not whether the original sentence was based on a Guidelines range that subsequent events rendered inapplicable, but whether maintenance of the sentence in light of those events manifests a complete miscarriage of justice." *Id.* at 106. In view of the "unique facts of [the] case," there was no miscarriage of justice because the "plea agreement provided for a sentence well below that Guidelines range," the Guidelines range "was advisory, not mandatory," and the initial sentence fell "in the middle of the Guidelines range applicable to him without a career offender enhancement." *Id.* at 103–04. The fact that the district court considered Hoskins's "career offender status at the time of sentencing" did not mean that Hoskins was entitled to be resentenced; "frustration of a sentencing judge's subjective intent does not, by itself, render a sentence a miscarriage of justice sufficient to support a cognizable collateral challenge to that sentence." *Id.* at 105.

Like Hoskins', the petitioner's sentence, even without the career offender enhancement, is still within the advisory Guidelines range. As the Court noted at sentencing, the petitioner's

7

criminal history category, without the enhancement, would have been V rather than VI. (October 11, 2017 Sentencing Tr. at 5.) The advisory Guideline range for drug distribution conspiracy convictions in criminal history category V with a criminal history score of 30 was 151 to 188 months. U.S.S.G. § 5A. The Court sentenced the petitioner to 168 months on those counts, well within the Guideline range.[5] *See Hoskins*, 905 F.3d at 104 (observing that because the defendant's "sentence falls in the middle of the Guidelines range applicable to him without a career offender enhancement . . . it [is] particularly difficult for him to show that such a sentence manifests a complete miscarriage of justice").[6]

Moreover, district courts evaluating Section 2255 challenges based on a miscalculation of or change in the Guidelines have found that sentencing errors do not constitute a miscarriage of justice. *See United States v. Uribe-Jimenez*, No. 12-CR-603, 2023 WL 6587305, at *3 (E.D.N.Y. Oct. 10, 2023) ("[E]ven if Defendant's argument [that there was a sentencing error] is successful, it would not justify granting him relief under § 2255 for a complete miscarriage of justice."); *United States v. Hall*, No. 18-CR-72, 2022 WL 17551065, at *4 (D. Vt. Dec. 9, 2022), *report and recommendation adopted*, No. 18-CR-72, 2023 WL 183901 (D. Vt. Jan. 13, 2023) (finding that a defendant's sentence "did not result in a miscarriage of justice given that it fell squarely within the Guidelines range calculated without the two-level enhancement"); *Reed v. United States*, No. 16-CV-1356, 2017 WL 5573151, at *7 (D. Conn. Nov. 20, 2017) (finding that the "'failure to sentence [the defendant] as a minor participant was [not] a fundamental defect that resulted in a complete miscarriage of justice'" (citation omitted)). Other circuit courts have

---

[5] As explained above, the Court imposed a mandatory consecutive 24-month term for the aggravated identity theft. (October 11, 2017 Sentencing Tr. at 28–32.)

[6] The petitioner argues that "[b]eing categorized as a Career Offender elevated the low end of Mr. Brown's Guidelines range by 66 months." (ECF No. 461 at 3.) The basis for this calculation is not clear.

held that "an incorrect career-offender enhancement under the advisory guidelines is not cognizable under § 2255 because it is not a fundamental defect that inherently results in a complete miscarriage of justice." *United States v. Folk*, 954 F.3d 597, 604 (3d Cir. 2020); *see also Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018); *United States v. Foote*, 784 F.3d 931, 940 (4th Cir. 2015); *Spencer v. United States*, 773 F.3d 1132, 1144 (11th Cir. 2014) (en banc); *Hawkins v. United States*, 706 F.3d 820, 823–24 (7th Cir. 2013), *opinion supplemented on denial of reh'g*, 724 F.3d 915; *Sun Bear v. United States*, 644 F.3d 700, 704–05 (8th Cir. 2011) (en banc).

    The parties do not dispute that the Guidelines calculation was accurate when the petitioner was sentenced. *See Reed*, 2017 WL 5573151, at *6 (observing that the court "did not misapply the Sentencing Guidelines because the Guidelines calculation was correct when Reed's sentence was imposed" (cleaned up) (citing *Graziano*, 83 F.3d at 590)). Nor does the Court's consideration of the Guidelines range warrant a reduction, because as the Second Circuit explained, the Guidelines range was "advisory, not mandatory." *Hoskins*, 905 F.3d at 104; *Uribe-Jimenez*, 2023 WL 6587305, at *3 (rejecting the defendant's Section 2255 challenge to the calculation of his Guidelines range in part because "the range provided by the Sentencing Guidelines was advisory, not mandatory"). The Court emphasized the statutory factors, especially the petitioner's criminal history, fugitive status, and the fact that he led a sophisticated and wide-ranging narcotics enterprise and identity theft ring. (October 11, 2017 Sentencing Tr. at 28–32.) For these reasons, the petitioner cannot demonstrate that application of the career offender designation constitutes a "complete miscarriage of justice." Accordingly, his Section 2255 petition is denied.

## II.      Motion for Compassionate Release[7]

The petitioner moves for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1). (ECF No. 467.)  He argues that three "extraordinary and compelling circumstances" justify a reduced sentence: (1) the disparity between his "actual sentence and the sentence he would receive if he was sentenced today;" (2) the disparity between his sentence and those of his co-defendants; and (3) the Second Circuit's decision in *Gibson*.  (*Id.* at 1.)  The government responds that these are not "extraordinary and compelling," and that consideration of the Section 3553(a) factors does not warrant a reduced sentence.  (ECF No. 474 at 6–9.)

As an initial matter, it is not clear that the petitioner has exhausted his administrative remedies, as required under 18 U.S.C. § 3582(c)(1)(A).  The petitioner asserts that he "petitioned the warden of FCI Talladega for compassionate relief" and that the warden "failed to respond." (ECF No. 467 at 4.)  The petitioner submits a letter to Warden Sean Snider, dated December 28, 2022; there is also a handwritten date of August 20, 2024, next to the petitioner's signature on that letter.  (ECF No. 467 at 11–13.)  The motion was filed on August 27, 2024; if the operative date of the letter is August 20, 2024, then the petitioner would not have waited the 30 days necessary to exhaust his administrative remedies.  *See* 18 U.S.C. § 3582(c)(1)(A) (permitting a defendant to file a motion after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request").

---

[7] The petitioner's motion for compassionate release was filed *pro se*, and is construed liberally "to raise the strongest arguments that [it] suggests." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citation omitted).  Still, *pro se* litigants are not exempt from the applicable substantive and procedural law. *Mejia v. Sup't, Elmira Corr. Facility*, 702 F. Supp. 3d 83, 93 (E.D.N.Y. 2023).

10

In any event, the petitioner has not demonstrated that there are extraordinary and compelling reasons to grant compassionate release. Courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). While courts "may but are no longer required to consider the Sentencing Commission's standard for what constitutes extraordinary and compelling reasons," the "'only statutory limit . . . is that rehabilitation alone shall not be considered an extraordinary and compelling reason.'" *United States v. Johnson*, 671 F. Supp. 3d 265, 280 (E.D.N.Y. 2023) (quoting *Brooker*, 976 F.3d at 237–38).[8]

In arguing that he is entitled to compassionate release, the petitioner, citing *Gibson*, claims that his sentence would be shorter had the Court not applied the career offender enhancement. (ECF No. 467 at 5–7.) However, as explained above, the 192-month sentence includes a mandatory consecutive sentence of 24 months for the aggravated identity theft; on the narcotics counts, the Court sentenced the petitioner to 168 months, which is within the 151 to 188-month Guidelines range without the career offender enhancement. Moreover, the Guidelines as amended in 2023 provide that "a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason" if the defendant "received an unusually long sentence and has served at least 10 years of the term of imprisonment." U.S.S.G. § 1B1.13(6). The petitioner has served about eight and a half years of his sentence. (*See* PSR at 1.) For these reasons, the *Gibson* decision is not an "extraordinary and compelling" circumstance.

---

[8] To the extent the petitioner argues that his rehabilitation alone constitutes an "extraordinary and compelling" circumstance (ECF No. 467 at 10), the law of this circuit makes clear that it does not. *See Brooker*, 976 F.3d at 237–38.

The petitioner also points out that he is "the only remaining defendant in custody under the underlying indictment," which he says is an extraordinary and compelling circumstance. (ECF No. 467 at 7.) However, the Second Circuit has held that sentencing courts are "not require[d] . . . to consider disparities between co-defendants." *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008); *accord United States v. Medina*, 607 F. App'x 60, 61 (2d Cir. 2015); *Johnson*, 671 F. Supp. 3d at 283. In this case, the Court weighed the Section 3553(a) factors in sentencing each defendant. Unlike most of the other defendants, the petitioner was a leader in the conspiracy. And unlike any of his codefendants, the petitioner pled guilty to additional crimes: trafficking drugs in Maine and identity theft. (October 11, 2017 Sentencing Tr. at 30.) Those factors warranted a more significant sentence.

"[A] court 'may' reduce a sentence if 'extraordinary and compelling circumstances' are shown," but only after "weighing the factors set forth in section 3553(a), to the extent they are applicable." *United States v. Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). In sentencing the petitioner, the Court emphasized the 3553(a) factors, and the facts that made a significant sentence appropriate: his leadership position in a "sophisticated enterprise" that distributed "significant amounts of narcotics," not just in New York, but in Maine; that he ran a separate identity theft operation; his criminal history; and his fugitive status. (October 11, 2017 Sentencing Tr. at 30.) The Court commends the petitioner for the rehabilitative steps he has taken, but finds that compassionate release is not appropriate at this time. Accordingly, the petitioner's motion for compassionate release is denied.

## CONCLUSION

For the reasons set forth above, the petitioner's motions for resentencing and for compassionate release are denied. Because the petitioner has not made a substantial showing of

the denial of a constitutional right the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to close the civil action.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
         May 30, 2025

13